## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGELINA S. MILLER, | ) | CASE NO. 5:24-CV-2128 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL ARMSTRONG |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.    INTRODUCTION

The Commissioner of Social Security[1] denied Plaintiff Angelina S. Miller's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Ms. Miller seeks judicial review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., ECF No. 1.) This matter is before me pursuant to Local Rule 72.2(b). (*See* ECF non-document entry dated December 9, 2024.)

For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

In July 2022, Ms. Miller applied to the Social Security Administration (SSA) seeking DIB and SSI benefits.[2] (Tr. 211, 223.) She claimed that she became disabled on November 26, 2021. (*Id.*) She identified eleven allegedly disabling conditions: (1) stroke; (2) lupus, (3) bipolar disorder,

---

[1] Carolyn W. Colvin was serving as Acting Commissioner of Social Security when the complaint was filed. She served in that role until January 2025. A series of acting commissioners led the Agency until May 2025, when Frank Bisignano, the current Commissioner, was confirmed.

[2] The administrative transcript appears at ECF No. 5. I will refer to pages within that transcript by identifying the Bates number printed on the bottom right-hand corner of the page (e.g., "Tr. 21"). I will refer to other documents in the record by their CM/ECF document numbers (e.g., "ECF No. 7") and page-identification numbers (e.g., "PageID# 800").

(4) arthritis; (5) chronic obstructive pulmonary disease; (6) asthma; (7) hip replacement; (8) knee surgery; (9) spinal cord decompression; (10) back surgery and fractured vertebrae; and (11) irritable bowel syndrome. (Tr. 270.)

The SSA denied Ms. Miller's application initially and upon reconsideration. (Tr. 66, 76–77, 98–100, 123, 129.) Ms. Miller requested a hearing before an administrative law judge (ALJ). (Tr. 135.) The ALJ held a hearing on February 5, 2024, at which Ms. Miller was represented by counsel. (Tr. 40–65.) Ms. Miller testified, as did an independent vocational expert. (*Id.*)

On February 13, 2024, the ALJ issued a written decision finding that Ms. Miller is not disabled. (Tr. 10–21.)

Ms. Miller requested review of the ALJ's decision. (Tr. 207–08.) Her counsel filed a brief identifying alleged errors in the ALJ's decision. (Tr. 341–42.) The brief focused exclusively on Ms. Miller's physical limitations, arguing that the ALJ's residual functional capacity "provides for exertional activities that are beyond what Ms. Miller can do." (Tr. 342.) On October 23, 2024, the Appeals Council denied review, rendering the ALJ's decision final. (Tr. 1.)

On December 9, 2025, Ms. Miller filed her Complaint, challenging the Commissioner's final decision that she is not disabled. (ECF No. 1.) Ms. Miller asserts the following assignment of error for review:

> The ALJ's determination is unsupported by substantial evidence as he failed to account for Ms. Miller's mental limitations.

(Pl.'s Merit Br. at 12, ECF No. 7, PageID# 800.)

### III.    BACKGROUND[3]

#### A.    Personal, Educational, and Vocational Experience

Ms. Miller was born in October 1972 and was 49 years old on the date of her application. (*E.g.*, Tr. 211.) She has a GED. (Tr. 271.) At the time of her application, she was working part-time for a humane society. (Tr. 220.) She had previously worked at a pet store, at a resale store, and in various temporary staffing roles over the years. (*Id.*; *see also* Tr. 240–49, 271.) She has a driver's license and is able to drive. (Tr. 45.)

#### B.    Relevant Hearing Testimony

##### 1.    *Ms. Miller's Testimony*

Ms. Miller testified that she works 20 to 30 hours per week for a local humane society. (Tr. 45.) She is able to drive, although sometimes driving causes her pain in her lower back and knee. (Tr. 45–46.) She currently does not have a vehicle, so she takes the bus to work. (*Id.*) There was a period of time that she was working two part-time jobs, which had her working around 12 hours per day. (Tr. 46.)

Ms. Miller described that she is in "constant pain" and has been "constantly dizzy" since suffering a stroke in 2021. (Tr. 50.) The pain is in her lower back and right knee. (Tr. 52.) She currently only takes acetaminophen for the pain. (Tr. 51.) Ms. Miller testified that she is not a candidate for knee surgery because she is taking clopidogrel, a blood thinner. (Tr. 53.)

Ms. Miller also suffers from "severe stomach issues" and sometimes experiences headaches. (Tr. 52.)

---

[3] As Ms. Miller's assignment of error is limited to non-exertional limitations stemming from her mental health conditions, I limit my summary of the evidence to that relevant to her mental conditions.

Ms. Miller suffered a stroke in November 2021. (Tr. 53.) She lost mobility in her left arm and left leg, but her primary lingering complaints from the stroke are difficulty with memory and dizziness. (*Id.*)

Ms. Miller testified that she is not treating with any professional for anxiety or depression, and had not been for a few years. (Tr. 54.) She is not taking any medications for psychological conditions. (Tr. 55.)

On a daily basis, Ms. Miller will wake up, care for her pets and then play videogames or watch television. (Tr. 56.) She will do laundry once a week. (*Id.*) She washes dishes, but the chore "kills [her]" because it aggravates her lower back. (*Id.*) She works for two days and then is off for two days. (Tr. 56–57.) Around the holidays or when other employees call off work, she sometimes works more than 30 hours per week. (Tr. 57.) Ms. Miller does her own grocery shopping when she has a ride, and she cleans her own home. (Tr. 58.)

Ms. Miller said that she does not really go out except to go to work or the store. (*Id.*) She socializes with co-workers and, sometimes, with her sister and with a friend who live out of the state. (*Id.*)

In response to questioning by her counsel, Ms. Miller described that after a work shift, she is very tired and is in a lot of pain. (Tr. 59.) Ms. Miller underwent testing recently to diagnose her stomach issues, but those had not yet been resolved. (*Id.*) She is on a very restricted diet to try to help. (Tr. 60.)

### 2. *Vocational Expert's Testimony*

Alida Coles testified as a vocational expert (VE) at the hearing. (Tr. 60.) The VE categorized Ms. Miller's past relevant work as that of a cashier (DOT 211.462-010) and of a composite job comprising the work of a general clerk (DOT 209.562-010) and pet shop attendant (DOT 410.674-010).

The ALJ then asked the VE to assume that an individual with Ms. Miller's age and education had the ability to perform work at the light exertional level and could work in a job with the following environmental and exertional limitations:

> [O]ccasional ramps and stairs; no ladders, ropes, or scaffolds; frequent balance, stoop, kneel, crouch, and crawl; [and] no unprotected heights [or] moving, mechanical parts.

(Tr. 62.)

The VE testified that such a person could not perform Ms. Miller's past relevant work but could perform the work of a collator operator, children's attendant, or fundraiser. (Tr. 62–63.)

The VE further testified that employers will tolerate employees being off-task up to nine percent of the time but will not tolerate employees who are absent or who come in late or leave early more than one day per month on a consistent basis. (Tr. 63.)

Ms. Miller's counsel asked the VE to consider that the person from the ALJ's first hypothetical question would be further limited to sedentary work. (Tr. 63.) The VE confirmed that such a person could not perform any of Ms. Miller's past relevant work. (*Id.*) The VE also confirmed that there were no transferrable job skills to such a residual functional capacity. (Tr. 64.)

## C.   <u>State Agency Consultants</u>

A disability examiner (Mary Sleeth), a physician (Mehr Siddiqui, M.D.), and a psychologist (Sallie Boulous-Sophy, Ph.D.) reviewed Ms. Miller's claim at the initial review level. (Tr. 66–76.) Dr. Boulous-Sophy opined that Ms. Miller has a medically determinable impairment in the category of "depressive, bipolar and related disorders." (Tr. 69.) She classified that disorder as severe. (*Id.*) She opined that Ms. Miller has a mild limitation with respect to her ability to understand, remember, or apply information and moderate limitations with respect to her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Tr. 70.)

5

Dr. Boulous-Sophy explained that there was insufficient medical evidence in the file, prior to the consulting examination, to establish a mental medically determinable impairment. (Tr. 70–71.) However, the consulting examiner diagnosed her with unspecified bipolar and related disorder and an unspecified alcohol-related disorder, although the latter was in sustained remission. (*Id.*) Dr. Boulous-Sophy further opined as follows:

> The results of the [psychological consulting examination] indicate mild to moderate functional limitations . . ., but the [claimant] does not appear wholly impaired. Though the claimant may have some limitations related to the impact of their mental [impairments], [the evidence] does not indicate that these [symptom] fully compromise the claimant's ability to function independently, effectively, and appropriately on a sustained basis at all levels. The statements made by the claimant regarding impairment-related functional limitations and restrictions cannot reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

(Tr. 71.)

In opining on Ms. Miller's mental residual functional capacity, Dr. Boulous-Sophy found that Ms. Miller had a moderate limitation with respect to her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; and to complete a normal workday and workweek without interruptions from psychologically based symptoms while performing at a consistent pace. (Tr. 74.) Dr. Boulous-Sophy described that Ms. Miller can "maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision; symptoms would preclude persistence at more complex tasks over time." (*Id.*)

Dr. Boulous-Sophy further opined that Ms. Miller had a moderate limitation with respect to her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (*Id.*) In this regard, the doctor wrote that Ms. Miller "is limited to brief and superficial contact with co-workers," "can tolerate the minimum

6

social demands of simple-task settings," and "cannot tolerate sustained contact with the general public." (*Id.*)

Finally, Dr. Boulous-Sophy opined that Ms. Miller has a moderate limitation with respect to her ability to respond appropriately to changes in her work setting, such that she can "tolerate simple changes in routine, avoid hazards, travel independently, and make/carry out simple plans" but cannot keep up with "fast-paced tasks with strict production quotas." (*Id.*)

Based in part on these conclusions, the consultants found that Ms. Miller was not disabled. (Tr. 76.)

A disability examiner (Dustin Atrip), a physician (Jose Ruiz, M.D.), and a psychologist (Larry Kravitz, Psy.D.) reviewed Ms. Miller's claim at the reconsideration level. (Tr. 88–99.) Dr. Kravitz noted that the SSA had attempted to contact Ms. Miller and her counsel to obtain additional information about her mental conditions, without success. (Tr. 92.) Dr. Kravitz concluded that the medical evidence in the file "affirms [the] initial determination of a severe mental impairment that does not meet or equal a listing." (Tr. 92.)

In reviewing the mental RFC from the initial level, Dr. Kravitz affirmed the limitations noted at the initial level. (Tr. 97.)

Ultimately, the consultants affirmed that Ms. Miller is not disabled. (Tr. 98.)

In a letter to Ms. Miller explaining this decision, the SSA wrote that the "medical evidence shows that you do have mental impairments that affect your ability to do some types of work" but "we have found that you are able to adjust to other work that is less demanding." (Tr. 129.)

### D.  <u>Relevant Medical Evidence</u>

The record contains a series of medical records relating primarily to Ms. Miller's physical conditions, including but not limited to her cardiac, spine, and gastrointestinal conditions, and her dizziness. These records include physical examinations, treatment and procedure notes, and

radiology results, among other things. Because the primary focus of those records is on Ms. Miller's physical conditions, I do not detail them here. However, I note that I have reviewed them. Where these records contain mental status examinations, unless otherwise noted below, they note that Ms. Miller presented with normal affect, mood, and behavior on examination at those appointments. (*See* Tr. 353, 359, 370, 380, 383, 398, 400, 405, 407, 440–41, 494, 496, 511, 513, 542, 545, 563, 583, 587, 591, 613, 617, 622, 628, 634, 646, 662, 669, 673, 677, 700, 744, 747, 760.)

Ms. Miller presented to physician assistant Stephanie Black on January 26, 2022, following up on an emergency-room visit from November 2021 for reported sudden left-sided weakness. (Tr. 693.) Ms. Black noted that Ms. Miller complained of "some residual difficulty with short term memory." (*Id.*) Also at this appointment, Ms. Miller reported being depressed and anxious. (Tr. 694.) On examination, however, Ms. Black observed that Ms. Miller was oriented and showed appropriate mood, affect, and judgment; she observed "no abnormal mental status." (Tr. 695)

At an appointment with Brent Gass, an advanced practice registered nurse, for a wellness examination on September 14, 2022, Ms. Miller's depression score was rated as "minimal depression." (Tr. 750.)

Ms. Miller underwent a consulting mental examination with Bryan Krabbe, Psy.D., on February 2, 2023. (Tr. 418–24.) Ms. Miller told Dr. Krabbe that she was "bipolar." (Tr. 418.) Ms. Miller reported difficulties staying focused at work, explaining that she gets distracted and has trouble managing stress. (Tr. 420.) She said that she was sad half of the time, cries out of nowhere, does not trust people, attempted suicide once, and feels worthless. (*Id.*) Dr. Krabbe noted that she "endorsed common symptoms of bipolar disorder including poor quality mood, feeling worthless, loss of energy, insomnia, decreased motivation, concentration problems, social withdrawal, crying

8

spells, pressure to keep talking, distractibility, increase in activity, impulsivity, mood swings, decreased need for sleep, and racing thoughts." (*Id.*)

On examination, Dr. Krabbe noted that Ms. Miller appeared normal except that she "appeared to be sad." (Tr. 420–21.) On testing, Ms. Miller performed slightly below average in several respects, including in her ability to recall digits backwards. (*Id.*) Dr. Krabbe summarized his findings as follows:

> At the present time, Ms. Miller lives alone. She has a few friends outside of her family. She was able to converse effectively to complete the evaluation. Her short-term memory skills were below average. Her attention and concentration skills were below average. As indicated earlier, Ms. Miller's intellectual functioning appears to fall within normal limits.

(Tr. 422.)

With respect to Ms. Miller's limitations, Dr. Krabbe opined that Ms. Miller "performed below average on a brief short-term memory activity, a task to assess difficulty remembering instructions," "had difficulty completing serial 7s but effectively completed a serial 3s task, which suggests some difficulty with attention and focus," "had difficulty recalling digits backwards, a simple structured task to assess attention and concentration," and "described symptoms of bipolar disorder that could result in increased worry and a corresponding decrease in attention and concentration." (Tr. 423.) He opined that diagnoses of unspecified bipolar disorder and unspecified alcohol use disorder (in sustained remission) were supported by the evaluation. (Tr. 422.)

Ms. Miller underwent a consulting physical examination on February 23, 2023. (Tr. 427–34.) The doctor performing the examination did not note any neurologic or psychiatric symptoms. (Tr. 428.) He noted that she conversed normally, made good eye contact, had clear thought processes, demonstrated good concentration, and had appropriate mood. (*Id.*)

On March 16, 2023, Ms. Miller called her doctor to request a note excusing her from jury duty. (Tr. 658.) She said that she was not "mentally capable" of serving and that serving was against her religion. (*Id.*)

## IV.    THE ALJ'S DECISION

The ALJ determined that Ms. Miller met the insured status requirements for a period of disability and DIB through December 31, 2027. (Tr. 12.) The ALJ further determined that, while Ms. Miller had engaged in substantial gainful activity from the second quarter of 2023 to the date of the decision, she had not engaged in such activity prior to that period. (Tr. 12–13.)

The ALJ next determined that Ms. Miller had the following severe impairments: (1) obesity; (2) lumbar spine degenerative disk disease, status post decompression surgery; (3) valvular heart disease; (4) osteoarthritis of the hips and knees, status post left hip replacement; (5) status post stroke/transient ischemic attack; and (6) irritable bowel syndrome. (Tr. 13.)

The ALJ explained that Ms. Miller also had medically determinable mental impairments, including bipolar disorder, but that these impairments were not severe. (Tr. 13.) The ALJ reasoned that the evidence showed that Ms. Miller only had mild limitations with respect to her ability to understand, remember, and apply information, to interact with others, to concentrate, persist, and maintain pace, and to adapt and manage herself. (Tr. 13–14.) The ALJ further concluded that the evidence did not otherwise indicate that Ms. Miller's ability to do basic work activities was limited more than minimally. (Tr. 14.) The ALJ noted that he nevertheless considered Ms. Miller's non-severe impairments in crafting the residual functional capacity. (*Id.*)

The ALJ then concluded that none of Ms. Miller's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ determined that Ms. Miller had the residual functional capacity ("RFC") to

perform work at the light exertional level, except that she can never climb ladders, ropes, or scaffolds, can only occasionally climb ramps and stairs, cannot be exposed to unprotected heights or moving mechanical parts, and can frequently balance, stoop, kneel, crouch, and crawl. (Tr. 15.)

The ALJ found that Ms. Miller was 49 years old on the alleged disability onset date and had at least a high school education, but she could not perform her past relevant work as a cashier, general clerk, or pet shop attendant. (Tr. 19.) The ALJ then determined that—considering Ms. Miller's age, education, work experience, and RFC—there were jobs that existed in significant numbers in the national economy that she could perform, including work as a "collator operator" (DOT 208.685-010), "children's attendant" (DOT 349.677-018), or "fundraiser" (DOT 293.357-014). (Tr. 20.) Accordingly, the ALJ determined that Ms. Miller is not disabled. (*Id.*)

## V.     LAW & ANALYSIS

### A.     <u>Standard of Review</u>

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (cleaned up) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consolidated Edison*, 305 U.S. at 229).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B. <u>Standard for Disability</u>

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 416.920. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (quoting 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P,

Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. § 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). An RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Agency regulations direct the ALJ to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17.

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 416.920(e)–(f). For the fifth and final step, even if the claimant's impairment does prevent her

13

from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 416.920(g). *See Abbott*, 905 F.2d at 923.

### C. <u>Analysis</u>

In her assignment of error, Ms. Miller contends that the ALJ erred at Step Two when he found that Ms. Miller's mental impairments were not severe. She further argues that this error caused the ALJ's RFC to be unsupported by sufficient evidence because the RFC did not contain any limitations stemming from Ms. Miller's severe mental impairments.

While Ms. Miller admits that the evidence of her "mental treatment is light" and that "the only evidence that pertains to mental health is that of the consultative examiner," she points out that Step Two has been described as a "de minimus hurdle." (Pl.'s Br., ECF No. 7, PageID# 801) (citing *Byers v. Dudek*, No. 5:24-cv-1354, 2025 WL 55581, *8 (N.D. Ohio Feb. 20, 2025)).

Finally, Ms. Miller argues that the ALJ erred when evaluating the opinions of the state agency consultants and Dr. Krabbe because the ALJ failed to adequately discuss the supportability and consistency of those opinions. (*Id.* at PageID# 802–05.)

The Commissioner defends the ALJ's decision, arguing that (1) Ms. Miller failed to adequately set forth her argument regarding the ALJ's Step Two finding, (2) the ALJ's Step Two finding was supported by substantial evidence, and (3) any error at Step Two would be harmless because the ALJ found Ms. Miller's physical impairments to be severe and considered all of her impairments—including those found non-severe—when crafting his RFC. (Opp'n Br., ECF No. 10, PageID# 816.) The Commissioner further contends that the ALJ adequately articulated how he considered the supportability and consistency factors, as required by 20 C.F.R. § 404.1520c and 416.920c, in finding the state agency consultants' and Dr. Krabbe's opinions to be unpersuasive. (*Id.* at PageID# 821.)

14

In reply, Ms. Miller admits that "an ALJ's failure to find an impairment severe at Step 2 is not always error" but argues that here that error permeated the remainder of the decision because no mental limitations were included in the RFC. (Reply, ECF No. 11, PageID# 824–25) (citing *Rodriguez v. Comm'r of Soc. Sec.*, No. 1:23-CV-01305, 2024 U.S. Dist. LEXIS 84853, at *15 (N.D. Ohio May 10, 2024)). She further argues that the ALJ's statement that "additional medical evidence received in the course of developing [Ms. Miller's] case for review at the administrative hearing level justifies a conclusion that [Ms. Miller's] impairments are less limiting than was concluded by the state and consultative examiner" (Tr. 18) was unsupported by any citation to the record and, therefore, the ALJ failed to draw an accurate and logical bridge to his conclusion that their opinions were unpersuasive.

After careful consideration, I agree with the Commissioner.

The ALJ found Ms. Miller to have a medically determinable impairment of bipolar disorder. (Tr. 13.) While the ALJ found this impairment to be non-severe, the ALJ continued through the remaining steps of the sequential analysis based on Ms. Miller's other, severe, impairments. When an ALJ finds severe and non-severe impairments at Step Two and continues with the subsequent steps in the sequential evaluation process, any error at Step Two is harmless. *E.g.*, *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Having found any error at Step Two to be harmless, I turn to the thrust of Ms. Miller's case—that the ALJ failed to include any mental limitations in her RFC, despite: (1) Dr. Krabbe's consulting opinion and the opinions of the state agency consultants; and (2) the ALJ's own finding that Ms. Miller had mild limitations with respect to her ability to understand, remember, and apply information, to interact with others, to concentrate, persist, and maintain pace, and to adapt and manage herself. (*See* Tr. 13–14.)

15

As an initial matter, the Commissioner is correct that the finding of a medically determinable impairment—even a severe one—does not automatically mean that a claimant has resulting functional limitations in their ability to work. *See e.g.*, *Kubas v. Comm'r of Soc. Sec.*, No. 1:22-CV-00856, 2023 WL 4744279, at *8 (N.D. Ohio July 25, 2023) ("The presence of a severe impairment alone does not automatically warrant an RFC limitation if it does not impact a claimant's ability to work."). Further, "a diagnosis alone is not enough to establish specific functional limitations as a matter of right." *E.g.*, *Thornton v. Saul*, No. 4:20-CV-01420-JRA, 2021 WL 3934332, at *11 (N.D. Ohio June 21, 2021), *report and recommendation adopted*, *Thornton v. Comm'r of Soc. Sec.*, No. 4:20CV1420, 2021 WL 4025192 (N.D. Ohio Sept. 2, 2021) (quoting *Teresa F. v. Saul*, No. 1:18-cv-01967-JRS-MPB, 2019 WL 2949910, at *5 n. 7 (S.D. Ind. July 9, 2019); *see also* Social Security Ruling 16–3p, 2016 WL 1119029, at *2 (2016) ("Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.")).

Here, it is undisputed that the only evidence in the record tending to support that Ms. Miller has functional limitations stemming from her bipolar disorder is the consulting evaluation of Dr. Krabbe. I further note that, while Ms. Miller reported past psychological treatment, psychiatric medication, and hospitalization for mental health concerns, no medical records substantiating that treatment is included in this record. This is so, even though the Agency requested more information from Ms. Miller about her mental health conditions at the administrative reconsideration level; attempts to contact her and her counsel for this information were unsuccessful.

In the absence of these records, then, the Court is left to determine whether the ALJ adequately addressed Dr. Krabbe's evaluation—and the opinions of the state agency psychologists

relying on that evaluation—in finding that Ms. Miller has no functional limitations related to her bipolar disorder.

In this respect, I am convinced that the ALJ adequately considered these opinions and that his RFC is supported by substantial evidence.

Social Security Ruling ("SSR") 98-6p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). A reviewing court must read the ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). ‼

Agency regulations state that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). Section 404.1520c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id.*

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. See 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2).

"As long as the ALJ discussed the supportability and consistency of the opinion and supported [the ALJ's] conclusions with substantial evidence within his decision, the Court will not disturb [the ALJ's] decision." *Njegovan v. Comm'r of Soc. Sec.*, No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022). That is the case here.

In finding Dr. Krabbe's and the state agency psychologists' opinions unpersuasive, the ALJ stated as follows:

> These opinions were based on information contained in the record at the time of the State agency reconsideration determination in this case, and no medical records generated or provided after that date were considered by the state and consultative examiners. However, additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level justifies a conclusion that the claimant's impairments are less limiting than was concluded by the state and consultative examiners. Nevertheless, I agree with the DDS consultants/Dr. Krabbe that the claimant's mental health impairments are not disabling in nature for the reasons listed above, including her limited mental health treatment history, without evidence of psychiatric hospitalization in the record, and her testimony that she is not currently taking psychotropic medications or receiving counseling services (hearing testimony).

(Tr. 18.)

Earlier in the opinion, the ALJ explained his consideration of Dr. Krabbe's evaluation more specifically. (Tr. 13–14.) After doing so, the ALJ noted that Dr. Krabbe's own evaluation "does not

. . . indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities" (Tr. 14.)

An ALJ properly addresses supportability by noting that a physician's opinion is inconsistent with the physician's own treatment records. *See Rattliff v. Comm'r of Soc. Sec.*, No. 1:20-cv-01732, 2021 WL 7251036, at *9 (N.D. Ohio Oct. 29, 2021) (holding that ALJ addressed supportability factor by noting that physician's opinion was inconsistent with physician's treating notes), *report and recommendation adopted*, 2022 WL 627055 (N.D. Ohio Mar. 3, 2022); *Neff v. Comm'r of Soc. Sec.*, No. 5:18 CV 2492, 2020 WL 999781, at *11 (N.D. Ohio Mar. 2, 2020). Here, there were no treating notes, but the ALJ stated that Dr. Krabbe's opinions were based on his own evaluation of Ms. Miller, which evaluation showed that there was no more than a minimal limitation in her ability to do work activities. As the state agency consultants both noted that their opinions were based solely on Dr. Krabbe's evaluation, it is clear that the same supportability analysis applies to their opinions.

With respect to consistency, the ALJ explained that no other medical record supported Dr. Krabbe's or the agency consultants' opined limitations. *See Merrell*, 2021 WL 1222667 at *7 (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by substantial evidence where opinion was inconsistent with other evidence in the record); *Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ did not err where ALJ specifically cited treatment records ALJ believed were inconsistent with treating physician's opinion and explained why). Moreover, the ALJ noted that "the claimant engages in a variety of daily activities that indicate a greater level of functioning than alleged," such as working some quarters of substantial gainful activity.

The ALJ therefore concluded that "there are no indications in the medical record of limitations beyond the performance of light level work with the non-exertional restrictions listed [in the RFC.]" (Tr. 18.)

I find that the ALJ's explanation of supportability and consistency are legally adequate. I further note that the ALJ wrote his decision in the context of the record and argument presented before the agency. Ms. Miller and her counsel, at the hearing and in their argument to Agency, focused almost exclusively on her physical (that is to say, exertional) limitations. I state this observation solely to point out that, while Ms. Miller would have liked the ALJ to discuss her mental limitations in more detail, the ALJ's decision is legally adequate when read in its entirety and with common sense.

Having found that the ALJ adequately addressed supportability and consistency, I turn finally to a consideration of whether the ALJ's RFC is supported by substantial evidence. In other words, I consider whether the RFC is supported by "'such relevant evidence as a reasonable mind might accept as adequate to support'" those conclusions. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"[A]n ALJ's RFC determination may be supported by substantial evidence, even if no 'physician offers an opinion consistent with that of the ALJ.'" *Fergus v. Comm'r of Soc. Sec.*, No. 5:20-CV-02612-CEH, 2022 WL 743487, at *9 (N.D. Ohio Mar. 11, 2022) (*quoting Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Indeed, "[t]he Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Borawski v. Comm'r of Soc. Sec.*, No. 1:20-CV-01091-JDG, 2021 WL 811717, at *18 (N.D. Ohio Mar. 3, 2021).

"The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (*quoting Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

Here, I am convinced that substantial evidence supports the ALJ's findings and the ALJ did not err in finding Dr. Krabbe's and the state agency psychologists' opinions to be unpersuasive as to functional limitations.

The ALJ acknowledged Ms. Miller's testimony that she suffers from depression and anxiety but accurately noted that she has been able to work gainful employment (a point not challenged in this case) despite not having taken psychiatric medications or attended any treatment for mental health concerns in years. The ALJ further noted Ms. Miller's activities of daily living, including that she is able to drive, take care of herself and her pets, and work 20 to 30 hours per week. (*See* Tr. 16.) The ALJ also recognized that the consultants ultimately concluded that Ms. Miller's mental impairments were not disabling, citing "her limited mental health treatment history, without evidence of psychiatric hospitalization in the record, and her testimony that she is not currently taking psychotropic medications or receiving counseling services . . . ."

21

In the absence of any meaningful psychological treatment records to the contrary, I find that a reasonable mind might accept this evidence as adequate to support the ALJ's conclusion that "the evidence did not otherwise indicate that Ms. Miller's ability to do basic work activities was limited more than minimally." (Tr. 14.)

Because any error at Step Two was harmless in this case, because the ALJ adequately addressed supportability and consistency in finding Dr. Krabbe's and the state psychologists' opinions largely unpersuasive, and because substantial evidence supports the ALJ's weighing of the evidence with respect to those opinions, remand is not warranted. *See Jones*, 336 F.3d at 477. To the extent Ms. Miller believes the ALJ should have weighed the evidence differently and imposed greater limitations, it is not a reviewing court's role to second guess the ALJ's determination. *Id.*

I therefore recommend that the Court overrule Ms. Miller's assignment of error.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated:  September 10, 2025              /s *Jennifer Dowdell Armstrong*
                                        Jennifer Dowdell Armstrong
                                        U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates

Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019).